## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GOVERNMENT EMPLOYEES INSURANCE CO., et al.,** | **Civil Action No. 20-18532 (KM)** |
| **Plaintiffs,** | **OPINION AND ORDER** |
| **v.** | |
| **ALLEN POMERANTZ, M.D., et al.,** | |
| **Defendants.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Stelton Radiology Corporation ("Stelton Radiology"), Dmitry Stolyar, Olga Galkina, Rapid Imaging Corp. ("Rapid"), East Brunswick Imaging Center, LLC ("EBIC"), and Roman Shaposhnikov (collectively the "Stelton Defendants") to quash five subpoenas served by Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "Plaintiffs" or "GEICO") served on various financial institutions seeking the Stelton Defendants' bank records. *See* Dkt. No. 74. Plaintiffs oppose the motion to quash. *See* Dkt. No. 79. For the reasons set forth below, the Stelton Defendants' motion to quash [Dkt. No. 74] is **GRANTED in part and DENIED in part.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' claims in this matter arise from allegedly fraudulent no-fault insurance charges submitted by the defendants to GEICO for non-reimbursable radiology services purportedly provided to automobile accident victims in New York and New Jersey who were eligible for coverage under GEICO no-fault insurance policies. *See* Dkt. No. 65, Amended Complaint ("AC").

The purportedly fraudulent radiology services were performed by Allen Pomerantz, M.D., who was named as a defendant in Plaintiffs' initial Complaint but is not named in the Amended Complaint. Dr. Pomerantz was associated with the defendant radiology facilities, Stelton Radiology, Rapid, EBIC, South Plainfield Radiology Corporation and Dynamic Medical Imaging LLC (collectively the "Radiology Facilities"), as an independent contractor.

Plaintiffs contend that the approximately $5,900,000.00 in charges submitted by the defendants were not eligible for coverage for three primary reasons. First, Plaintiffs claim that the defendants provided unlawful compensation in exchange for patient referrals to the Radiology Facilities. According to Plaintiffs, Dr. Pomerantz and the Radiology Facilities encountered difficulties obtaining "legitimate referrals from legitimate referral sources" due to the "plethora of similar radiology practices" and Dr. Pomerantz's professional disciplinary history and lack of board certification as a radiologist. AC at ¶ 72. Rather than obtaining "legitimate referrals," Plaintiffs contend that Dr. Pomerantz and the Radiology Facilities received referrals from "chiropractors and other healthcare providers" focused on providing treatment to individuals pursuing personal injury lawsuits based on automobile accidents. *Id.* at ¶¶ 72-73. Such healthcare providers, Plaintiffs contend, "often have an incentive to make it appear as if their patients are seriously injured, when in fact they are not, in order to support the patients' personal injury claims" and are "in a position to make a substantial number of radiology referrals." *Id.* at ¶¶ 73-74.

Specifically, Plaintiffs claim that certain healthcare providers referred patients to the defendants for radiology services conducted "pursuant to a fraudulent, pre-determined protocol designed to provide false or exaggerated injury 'diagnoses' early on in [patients'] courses of treatment. . . ." *Id.* at ¶ 85. By doing so, the defendants "create[d] a false justification for continued, medically unnecessary treatment and billing" by the referring providers and supported the patients'

personal injury claims, ensuring that the Radiology Facilities would continue to receive "a steady stream" of referrals. *Id.* Plaintiffs contend that by providing fraudulent radiology services designed to be beneficial to the referring providers, the defendants "provided unlawful compensation in exchange for patient referrals." *Id.* at ¶ 151.

Secondly, and relatedly, Plaintiffs allege that the services provided by the defendants were medically unnecessary or illusory. According to Plaintiffs, most of the insureds at issue, to the extent they had been involved in any actual accident, "had been involved in relatively minor, low-speed, low-impact accidents" with no resulting serious injuries. *Id.* at ¶ 63. Despite the lack of documented serious injuries, or any injuries at all, Plaintiffs claim the defendants conducted medically unnecessary MRIs and falsified the results to support the fraudulent diagnoses of serious injuries or conditions.

Finally, Plaintiffs contend that the radiology services provided by the defendants are not eligible for coverage because they failed to comply with the applicable regulations governing radiology facilities and service providers in two respects. First, Plaintiffs claim that because Dr. Pomerantz performed his services at the Radiology Facilities as an independent contractor, those services are ineligible for coverage under New York law, which requires that healthcare services be performed by healthcare providers themselves or their employees and not by independent contractors. Secondly, Plaintiffs argue that Stelton Radiology, Rapid and South Plainfield Radiology were not eligible to provide radiology services to insureds in New Jersey because they "lacked legitimate medical directors who legitimately fulfilled the required duties of ambulatory care facility medical directors" in violation of the applicable regulations. *Id.* at ¶ 151.

Based on the foregoing allegations, Plaintiffs seek a declaratory judgment that the defendants are not entitled to receive payment on the outstanding billing they have submitted to

GEICO under New York no-fault insurance policies and that the Radiology Facilities were not in compliance with "all significant law and regulations governing healthcare practice in New Jersey." *Id.* at 165-68. Plaintiffs also assert various claims for violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and for common law fraud and unjust enrichment.

Plaintiffs filed their initial Complaint in the United States District Court for the Eastern District of New York on October 2, 2020. *See* Dkt. No. 1. On December 7, 2020, this matter was transferred to this Court. *See* Dkt. No. 27. Plaintiffs' claims against Dr. Pomerantz were voluntarily dismissed on June 1, 2021. *See* Dkt. No. 47. Thereafter, Plaintiffs filed a motion seeking leave to file an Amended Complaint to add additional allegations and a new defendant, South Plainfield Radiology Corporation, based on information obtained during discovery. *See* Dkt. No. 50. Plaintiffs' motion was granted as unopposed on August 30, 2021 [Dkt. No. 61] and Plaintiffs' Amended Complaint was filed on September 8, 2021 [Dkt. No. 65]. In response to the Amended Complaint, the Stelton Defendants filed a motion to compel arbitration, or, in the alternative, to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which remains pending. *See* Dkt. No. 77.

On August 19, 2021, Plaintiffs served five subpoenas seeking Defendants' corporate bank records (the "Subpoenas").[1] After "learning that the banks did not receive the [S]ubpoenas," Plaintiffs served the Subpoenas again on September 17, 2021. Dkt. No. 79 at n. 1. Thereafter, the Stelton Defendants timely filed the present motion seeking to quash the Subpoenas claiming that the Subpoenas are overbroad and improperly seek confidential business information. *See* Dkt. No.

---

[1] The Subpoenas were served on T.D. Bank, N.A., Wells Fargo Bank, N.A. and Capital One, N.A. seeking Rapid's corporate bank records, JP Morgan Chase, N.A. seeking EBIC's corporate bank records, and Bank of America, N.A. seeking Stelton Radiology's corporate bank records. *See* Dkt. No. 74-2 at Ex. 11.

74. Plaintiffs, arguing that the information sought by the Subpoenas is both relevant and discoverable, oppose the motion to quash. *See* Dkt. No. 79.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999).

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.,* 2008 WL 4952445 (D.N.J. Nov. 18, 2008). In addition, pursuant to Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue

burden or expense on a person subject to the subpoena" and the Court has a responsibility to enforce this duty. However, it is the party claiming undue burden that must establish same. *Nye v. Ingersoll Rand Company,* Civ. No. 08–3481(DRD), 2011 U.S. Dist. LEXIS 7383, at *6, 2011 WL 253957 (D.N.J. Jan. 25, 2011); *OMS Investments,* 2008 WL 4952445, at *2. If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served. Fed. R. Civ. P. 45(d)(3).

Specifically, four circumstances exist which require the Court to quash or modify a subpoena. Rule 45(d)(3)(A) provides that:

> (A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

*Id.* In contrast, a court *may* quash or modify a subpoena where it requires "disclosing a trade secret or other confidential research, development, or commercial information." Rule 45(d)(3)(B)(i). The burden of the party opposing the subpoena "is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014) (internal quotation marks omitted); *see also Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (moving party bears a "heavy burden" of demonstrating that an enumerated need for quashing the subpoena exists).

### III.    DISCUSSION

As an initial matter, because the Stelton Defendants move to quash subpoenas served on non-parties, the Court must determine whether the Stelton Defendants have standing to bring the present motion. Generally, a party does not have standing to quash a subpoena served on a third party. *Kida v. EcoWater Sys. Inc.*, Civ. A. No. 10-4319, 2011 WL 1883194, at *2 (E.D. Pa. May 17, 2011). However, a party to an action has standing to quash or modify a non-party subpoena where the party seeking to quash or modify the subpoena claims a privilege or privacy interest in the subpoenaed information. *DIRECTV, Inc. v. Richards*, No. Civ. 03-5606 (GEB), 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (citing *Catskill Dev., LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002)). "[C]ourts have generally found that 'personal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information.'" *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (citing *Ace Hardware Corp. v. Celebration Ace Hardware, LLC,* No. 09–cv–66, 2009 WL 2753197, at *1 (D.Del. Aug. 28, 2009)). Thus, because the Subpoenas request the Stelton Defendants' financial records, the Court finds that the Stelton Defendants have sufficient standing to challenge them.

Having found that the Stelton Defendants have standing, the Court turns to the merits of the motion to quash. The Stelton Defendants argue that the Subpoenas should be quashed because the information they seek is not relevant to Plaintiffs' claims and is confidential and proprietary. In the alternative, the Stelton Defendants request the entry of a protective order limiting the scope of the discovery sought by the Subpoenas and requiring that any responsive information be produced under an Attorney's Eyes Only ("AEO") designation.

The Court will first address the Stelton Defendants' contention that the Subpoenas seek information not relevant to Plaintiffs' claims in this matter. According to the Stelton Defendants, in cases where a "kickback" scheme is alleged, "courts have found that there may be a reasonable argument that financial information of defendants is important as it could support the theory that they are receiving [remuneration] for performing medically unnecessary procedures." Dkt. No. 74-1 at p. 6. In this case, however, because Plaintiffs do not allege the existence of a kickback scheme, the Stelton Defendants argue that the financial information sought by the Subpoenas is not relevant.

According to Plaintiffs, the Stelton Defendants' bank records are relevant and discoverable because the bank records will provide evidence of: (1) the relationships between and among the defendants; (2) the relationships between and among the defendants and Dr. Pomerantz; (3) the extent to which the defendants' revenues are derived from fraudulent no-fault insurance billing; (4) the extent to which the defendants were enriched by their alleged fraudulent billing scheme; (5) the defendants' motives and intent to participate in the alleged fraudulent billing scheme; and (6) the scope of the alleged racketeering scheme and conspiracy. The Court finds that the information sought by the Subpoenas is clearly relevant to Plaintiffs' claims in this matter and will indeed, as Plaintiffs assert, reveal the contours of the relationships between the defendants and further details of the alleged fraudulent billing scheme along with the amount of damages Plaintiffs suffered.

Although the Stelton Defendants claim that the bank records sought by Plaintiffs are relevant only to claims alleging a kickback scheme, the Court finds that the Stelton Defendants' bank records are not somehow rendered irrelevant simply because this action does not include a kickback claim. Tellingly, the Stelton Defendants fail to cite to a single authority which supports

such a limitation on discovery and the Court sees no reason to impose that limitation here. The Stelton Defendants' bank records are clearly relevant to the claims asserted by Plaintiffs, even though such claims do not allege a kickback scheme.[2]

The Court will next address the Stelton Defendants' assertion that the Subpoenas must be quashed because they have a "valid claim for privilege or privacy in their financial information . . . ." Dkt. No. 74-1 at p. 7. According to the Stelton Defendants, their bank records contain "names of vendors, suppliers, and costs of goods and services," and if such information is disclosed to Plaintiffs or the other defendants, "it could be detrimental to the Stelton Defendants, any competitive advantage they may have, and their business dealings, generally." *Id.* at p. 7-8. The Stelton Defendants' conclusory argument that the production of their bank records will cause them some unidentified competitive harm falls far short of establishing that the Subpoenas implicate information that is either privileged or commercially sensitive. In the absence of any further explanation, the Court declines to find that references in the Stelton Defendants' bank records to "names of vendors, suppliers, and costs of goods and services" requires or permits the Subpoenas to be quashed.

Finally, the Stelton Defendants argue that the Subpoenas are overly broad, and that in the event the motion to quash is denied, the Court should enter a protective order preventing the disclosure of their "proprietary and confidential business information" contained in the bank records. Dkt. No. 74-1 at p. 8. Specifically, the Stelton Defendants argue that the information sought should be limited to information from either October 2, 2014 to the present or from January

---

[2] In light of the Court's finding that the Subpoenas target information relevant to Plaintiffs' claims, the Stelton Defendants' related contention that the Subpoenas represent an improper attempt by Plaintiffs to "seek discovery to form the basis for additional potential claims" because the information sought by Plaintiffs is only relevant to claims of a kickback scheme and no such claim is alleged in this matter is similarly without merit.

27, 2016 to the present, rather than from January 1, 2014 to the present, and that the responsive documents should be produced under an Attorney's Eyes Only ("AEO") designation.

As to the temporal scope of the Subpoenas, the Stelton Defendants claim that because Plaintiffs' fraud claims are governed by a six-year statute of limitations and Plaintiffs' RICO claims are subject to a four-year statute of limitations, and because this matter was commenced on October 2, 2020, Plaintiffs are only entitled to information from October 2, 2014 to the present. The Stelton Defendants further argue that because they "submitted to an Examination Under Oath ("EUO") concerning some of the very claims Plaintiffs contend in this litigation to have been improperly submitted" on or about January 27, 2016, "Plaintiffs should not now be granted a 'second bite at the apple' to get discovery that could have been sought in 2016" during the EUO. Dkt. No. 74-1 at p. 9.

The Court declines to impose the temporal limitations suggested by the Stelton Defendants. Because Plaintiffs claim that the defendants' fraudulent scheme began in 2014 and continues through the present, the Court finds the temporal scope of the Subpoenas to be appropriate. The vague and unexplained "EUO" the Stelton Defendants allegedly submitted to in January 2016, which concerned "some of the claims Plaintiffs content in this litigation," does nothing to alter the Court's finding.

The Stelton Defendants additionally contend that the bank records should be produced under an AEO designation and subject to the Discovery Confidentiality Order entered in this matter on June 16, 2021. *See* Dkt. No. 49 ("DCO"). The Court agrees that the bank records should be produced subject to the DCO, but declines to order that they be produced under an AEO designation. The Stelton Defendants have failed to provide any support for their position that the bank records qualify for AEO protection under the DCO. In the absence of any such explanation,

the Court orders that information produced in response to the Subpoenas shall be subject to the confidentiality provision of the DCO.

In light of the foregoing, the Court finds that the Subpoenas seek relevant and discoverable information and that the Stelton Defendants have failed to demonstrate a basis for the Subpoenas to be quashed. However, the Court will grant the portion of the Stelton Defendants' motion which requests that the information produced in response to the Subpoenas be subject to the DCO. Accordingly, the Stelton Defendants' motion to quash [Dkt. No. 74] is GRANTED in part and DENIED in part. The motion is granted only insofar as it requests that the information produced in response to the Subpoenas be done so under the DCO. The Stelton Defendants' motion is denied in all other respects.

## IV.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Federal Rule of Civil Procedure 78;

**IT IS** on this 11th day of April, 2022,

**ORDERED** that the Stelton Defendants' motion to quash the Subpoenas [Dkt. No. 74] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Stelton Defendants' motion to quash is granted only insofar as it requests that the information produced in response to the Subpoenas be done so under the DCO; and it is further

**ORDERED** that the information produced in response to the Subpoenas be subject to the confidentiality provision of the DCO; and it is further

**ORDERED** that the Stelton Defendants' motion to quash is denied in all other respects.

 s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**