UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY CO.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**STELTON RADIOLOGY CORPORATION, DMITRIY STOLYAR, OLGA GALKINA, RAPID IMAGING CORP., DYNAMIC MEDICAL IMAGING LLC, STEVEN P. BROWNSTEIN, M.D., EAST BRUNSWICK IMAGING CENTER, LLC, ROMAN SHAPOSHNIKOV, and SOUTH PLAINFIELD RADIOLOGY CORPORATION,**<br><br>**Defendants.** | Civ. No. 20-18532 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO"), are automotive insurers. GEICO alleges that defendants, who are medical facilities and their owners, submitted or caused to be submitted thousands of fraudulent claims for reimbursement of medical expenses. GEICO seeks to recover more than $5,900,000.00 that it paid to defendants. The amended complaint contains twenty-two Counts, including unjust enrichment, common law fraud, violations of the Racketeer Influenced and Corrupt Organizations Act

1

("RICO"), and violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"). Defendants Dynamic Medical Imaging LLC and Steven P. Brownstein (collectively the "Dynamic defendants") now move to dismiss the counts pleaded against them for failure to state a claim, under Rule 12(b)(6). (DE 71.) Defendants Stelton Radiology Corporation, Dmitriy Stolyar, Olga Galkina, Rapid Imaging Corp., East Brunswick Imaging Center, LLC, Roman Shaposhnikov, and South Plainfield Radiology Corporation (collectively the "Stelton defendants") move to compel arbitration and in the alternative dismiss the Counts pleaded against them under Rule 12(b)(6). (DE 77.) For the reasons set forth below, both motions are **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND[1]

The allegations of the amended complaint are as follows: GEICO is an automotive insurer which has sued defendants to recover amounts GEICO paid on fraudulent "no-fault," "personal injury protection" ("PIP") claims. Those claims were primarily for MRIs that are alleged to have been medically unnecessary or otherwise un-reimbursable. (Am. Compl. ¶ 1, 7.) The defendants are a set of New Jersey radiology facilities and their owners. (*Id.* ¶ 8–18.) No longer included as a defendant is Allen Pomerantz, who performed most of the allegedly fraudulent MRIs at the various radiology facilities and served as the medical director at Stelton Radiology, Rapid Imaging, and South Plainfield Radiology. (*Id.* ¶ 19–20.)

In short, GEICO alleges that thousands of insured drivers from New York and New Jersey who suffered at worst minor soft tissue injuries in minor automobile crashes were referred to defendants' businesses and given

---

[1]    Certain key items from the record will be abbreviated as follows:

|             |   |                                                                                     |
|-------------|---|-------------------------------------------------------------------------------------|
| DE          | = | Docket entry number in this case                                                    |
| Am. Compl.  | = | GEICO's Amended Complaint (DE 65)                                                    |
| Dynamic Br. | = | Dynamic defendants' brief in support of their motion to dismiss (DE 71-4)           |
| Stelton Br. | = | Stelton Defendants' brief in support of their motion to dismiss and compel arbitration (DE 77-1) |

medically unnecessary MRIs.[2] (*Id.* ¶ 61–66.) Under New York and New Jersey law, automobile insurance policies provide benefits for personal injuries sustained in an accident involving the covered automobile, regardless of whether the driver was at fault for the accident. (*Id.* ¶ 31–32, 49–51.) This coverage is called "personal injury protection," or "PIP." (*Id.*) When insureds receive treatment, they can assign their right to PIP benefits to their medical providers, who can then seek direct reimbursement from insurance companies. (*Id.* ¶ 32, 51.) Defendants are such medical providers, *i.e.,* assignees of their patients' PIP benefits.

GEICO alleges that its payments to defendants were fraudulently obtained for several reasons. The core allegation is that defendants billed for and exaggerated the results of medically unnecessary MRIs that were provided based on pre-determined protocols to generate profits for the defendants. GEICO also alleges that the treatments did not qualify for PIP reimbursement for other reasons, including that Pomerantz was an independent contractor not an employee (*id.* ¶ 129), and that Stelton Radiology, Rapid Imaging and South Plainfield Radiology operated without legitimate medical directors (*id.* ¶ 138–140).

GEICO's insurance policies with its insureds include a "GEICO Decision Point Review Plan and Precertification Requirements" ("DPRP"). (DE 77-3, Ex. 1.) The DPRP allows the assignment of benefits from insureds to medical providers but requires the providers to submit disputes to Alternative Dispute Resolution after an internal appeal process. (*Id.* at 9.) The section of the DPRP titled "Dispute Resolution" states in full:

> If there is a dispute *as to any issue arising under* this Decision Point Review/Precertification Plan, or *in connection with* any claim for Personal Injury Protection benefits, a request for the resolution of that dispute may be made by the Insured/Eligible Injured Person, GEICO, or a treating health care provider who has

---

[2]   Patients have to be referred by a doctor to receive an MRI at the facilities. No kickback scheme is alleged, however, and the possibility of such a scheme is discussed only in the most general terms. (Am. Compl. ¶ 72–75.)

> a valid Assignment of Benefits from the Insured or Insured/Eligible Injured Person. The request for dispute resolution may also include a request by any of these parties for review by a Medical Review Organization.
>
> If we, GEICO, and/or any person seeking Personal Injury Protection benefits, do not agree as to the recovery of such benefits, or with any decision made or arising pursuant to this Decision Point Review/Precertification Plan, *then the matter is required and can only be resolved by a dispute resolution organization pursuant to New Jersey law rather than in the Superior Court of New Jersey*. A health care provider is required to have fully complied with all aspects of this Decision Point Review/Precertification Plan, including but not limited to having fully complied with the Internal Appeal Process, prior to filing any claim or action in dispute resolution.

(*Id.* at 10 (emphasis added).) In addition, GEICO provides a standard form that allows its insureds to assign their benefits to providers in exchange for medical services. That form requires that the provider agree to "submit disputes as defined in the Plan to the Internal Dispute Resolution process set forth therein." "After final determination," it continues, "I (we) will submit disputes not resolved by the Inter[n]al Dispute Resolution process to the Personal Injury Protection dispute resolution process set forth in N.J.A.C. 11:3-5." (*Id.* at 13.) Thus, GEICO policy requires medical providers who were assigned benefits to send all disputes "in connection with any claim for Personal Injury Protection benefits" to GEICO's internal dispute resolution process and then to arbitration, not to court. (*Id.* at 10.)

GEICO seeks to recover more than $5.9 million in reimbursements that it paid in reliance on defendants' allegedly fraudulent billing. (*Id.* ¶ 160.) GEICO's amended complaint asserts twenty-two causes of action. Count 1 seeks a declaratory judgment against the radiology facilities that GEICO does not have to pay outstanding PIP claims and that during the time period at issue the facilities did not comply with the law. (*Id.* ¶ 162–168.) Counts 2, 7, 11, 15, and 19 allege violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J. Stat. Ann. §17:33A–1 *et seq.*, against each radiology facility and its owner(s). (*Id.* ¶ 169–172, 201–204, 225–228, 249–252, 273–276.)

4

Counts 3, 8, 12, 16, and 20 allege civil violations of RICO, 18 U.S.C. § 1962(c), based on predicate racketeering acts of mail fraud. (*Id.* ¶ 173–180, 205–212, 229–236, 253–260, 277, 284.) Count 4 alleges conspiracy to violate RICO, 18 U.S.C. § 1962(d), against Stolyar and Galkina. (*Id.* ¶ 181–188.) Counts 5, 9, 13, 17 and 21 allege common law fraud against each facility and its owner(s). (*Id.* ¶ 189–194, 213–218, 237–242, 261–266, 285–290.) Finally, Counts 6, 10, 14, 18, and 22 allege unjust enrichment against each facility and its owner(s). (*Id.* ¶ 195–200, 219–224, 243–248, 267–272, 291–296.)

This case was first filed on October 2, 2020, in the United States District Court for the Eastern District of New York. (DE 1.) In December 2020, plaintiffs consented to transfer the case to this district. (DE 27.) On January 26, 2021, the Stelton defendants moved to compel arbitration and dismiss the complaint. (DE 31.) On May 28, 2021, GEICO dismissed its claims against Pomerantz. (DE 45.) On July 15, 2021, GEICO moved to amend its complaint (DE 50) and Judge James B. Clark granted that motion on August 30, 2021 (DE 61). GEICO filed its amended complaint on September 8, 2021. (DE 65.) The Dynamic defendants moved to dismiss the Counts pleaded against them, *i.e.*, Counts 1, 11, 12, 13, and 14, on September 22, 2021. (DE 71.) The Stelton defendants moved to dismiss and compel arbitration on Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, and 22, *i.e.* all of the Counts pleaded against the Stelton defendants, on October 6, 2021. (DE 77.) GEICO filed briefs in opposition to the two motions (DE 75, 80) and defendants filed replies (DE 78, 84). These motions are now fully briefed and ripe for decision.

## II.   LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss,

the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## B. Rule 9(b)

For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

In general, "[t]o satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." (internal quotation and citation omitted)).

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

### C. Arbitration

"[W]hen it is clear on the face of the complaint that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard . . . ." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020). At this stage, judicial review is limited to two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute

between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014). Because neither party contests the validity of the Agreement, I assess only whether the disputes at issue fall within the scope of the Agreement's arbitration clause and whether New Jersey law allows such disputes to be arbitrated.

Unless otherwise agreed, the arbitrability of a dispute is generally a question for judicial determination. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). What is more, New Jersey's Arbitration Act states that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." N.J. Stat. Ann. § 2A:23B-6(b). No party having contended otherwise, I assume without further analysis that the Agreement leaves the question of arbitrability to judicial determination. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Moon v. Breathless Inc.*, 868 F.3d 209, 212–13 (3d Cir. 2017). Thus, in determining whether the dispute is arbitrable, I apply the law of this forum: New Jersey contract law. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017).

### III.   DISCUSSION

The Stelton defendants' motion to compel arbitration I grant in part, concluding that all Counts pleaded against them must be arbitrated, with the exception of the NJIFPA Counts. Those remaining NJIFPA claims survive the Stelton defendants' 12(b)(6) motion and will go forward. The Dynamic defendants did not move to compel arbitration, but only for dismissal pursuant to Rule 12(b)(6). That motion is denied. Finally, I conclude that the declaratory judgment Count brought against the radiology facilities must for the most part be dismissed, reserving one issue as to New York insureds.

8

## A. Stelton Defendants' Motion to Compel Arbitration

The Stelton defendants move to compel arbitration of all claims brought against them. Those claims, they argue, should be arbitrated both under the New Jersey Automobile Insurance Cost Reduction Act (the "Auto Act") and under the arbitration clause contained in GEICO's insurance policies. (Stelton Br. at 7–17.) I find that although the Auto Act does not require arbitration, the arbitration provision of GEICO's DPRP does.

The Auto Act, N.J. Stat. Ann. § 39:6A-5.1, provides that "[a]ny dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage … arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided." N.J. Stat. Ann. § 39:6A-5.1(a). The Act defines the types of disputes for which arbitration is required:

> [D]isputes involving medical expense benefits may include, but not necessarily be limited to, matters concerning: (1) interpretation of the insurance contract; (2) whether the treatment or health care service which is the subject of the dispute resolution proceeding is in accordance with the provisions of section 4 of P.L.1972, c. 70 (C.39:6A-4), section 4 of P.L.1998, c. 21 (C.39:6A-3.1) or section 45 of P.L.2003, c. 89 (C.39: 6A-3.3) or the terms of the policy; (3) the eligibility of the treatment or service for compensation; (4) the eligibility of the provider performing the treatment or service to be compensated under the terms of the policy or under regulations promulgated by the commissioner, including whether the person is licensed or certified to perform such treatment; (5) whether the disputed medical treatment was actually performed; (6) whether diagnostic tests performed in connection with the treatment are those recognized by the commissioner; (7) the necessity or appropriateness of consultations by other health care providers; (8) disputes involving application of and adherence to fee schedules promulgated by the commissioner; and (9) whether the treatment performed is reasonable, necessary, and compatible with the protocols provided for pursuant to P.L.1998, c. 21 (C.39:6A-1.1 et al.).

N.J. Stat. Ann. § 39:6A-5.1(c). This provision was intended to reduce the number of PIP claims being contested in court. *See State Farm Mut. Auto. Ins. Co. v. Molino*, 289 N.J. Super. 406, 410 (App. Div. 1996). For example, if GEICO asserted that it should not be required to pay a specific claim because it was medically unnecessary, it would be required to submit such a dispute to arbitration. The Stelton defendants, however, go farther; they argue that GEICO's RICO, common law fraud, unjust enrichment, and NJIFPA claims must likewise be submitted to arbitration because they are disputes "regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage." (Stelton Br. at 10.) Courts, however, have repeatedly rejected this argument.

In cases such as *GEICO v. Reg'l Orthopedic Prof'l Ass'n*, courts in this district have held that RICO and other fraud claims "go beyond" the type of PIP disputes for which arbitration is mandatory, and can therefore be heard in court. No. 17-1615(RMB/JS), 2017 U.S. Dist. LEXIS 197599, at *3 (D.N.J. Dec. 1, 2017); *see also GEICO v. Adams Chiropractic Ctr. P.C.,* No. 19-20633(SDW)(ESK), 2020 U.S. Dist. LEXIS 30753, at *2 n.3 (D.N.J. Feb. 24, 2020) ("it is well-established that NJIFPA, RICO or common law fraud claims are not subject to mandatory arbitration under New Jersey's no-fault insurance statute"). The cases cited by the Stelton defendants are not on point. Those cases involve garden-variety PIP disputes, not RICO, fraud, or NJIFPA claims.[3] In short, the statutory arbitration scheme is meant to stop routine PIP claims from clogging the courts, not to prevent insurers from pursuing broader fraud and racketeering allegations in court.

---

[3]     For example, *Endo Surgi Ctr., P.C. v. Liberty Mut. Ins. Co.*, 391 N.J. Super. 588, 591 (App. Div. 2007), involves a dispute over PIP benefits with no reference to common law fraud or RICO claims. *See also State Farm Ins. Co. v. Sabato*, 337 N.J. Super. 393, 396 (App. Div. 2001) (same). Similarly, *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 407 (2003) and *Caruso v. Ravenswood Developers, Inc.*, 337 N.J. Super. 499, 508 (App. Div. 2001) merely establish that RICO claims *may* be subject to arbitration but have nothing whatsoever to do with New Jersey's PIP arbitration scheme.

The fact that the Auto Act does not mandate arbitration, however, is not the end of the story. GEICO's policies with its insureds include a broad arbitration agreement as part of the DPRP, which covers medical providers who accept the assignment of insureds' benefits. (DE 77-3, Ex. 1 at 13.) The DPRP arbitration agreement states that "[i]f there is a dispute *as to any issue arising under* this Decision Point Review/Precertification Plan, or *in connection with* any claim for Personal Injury Protection benefits," a request for dispute resolution may be made. If either party objects to the result of the dispute resolution, "then the matter is required and can only be resolved by a dispute resolution organization pursuant to New Jersey law rather than in the Superior Court of New Jersey." (*Id.* at 10.)

Neither party disputes that this arbitration agreement was validly formed. It is true, of course, that parties who agree to arbitrate some disputes do not necessarily agree to arbitrate every dispute that might arise between them. *See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989) ("parties are generally free to structure their arbitration agreements as they see fit"). Accordingly, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). Ultimately, then, whether a dispute falls within the scope of an arbitration clause depends upon (1) the breadth of the arbitration clause, and (2) the nature of the given claim. *See CardioNet*, 751 F.3d at 172.

The arbitration clause here is quite broad, and I find that it unambiguously covers GEICO's claims against the Stelton defendants. The key phrase in the arbitration agreement states that disputes "as to *any issue arising under* this Decision Point Review/Precertification Plan, or *in connection with* any claim for Personal Injury Protection benefits" must be arbitrated. New Jersey courts have read both phrases, "arising out of" and "in connection with," to mandate arbitration in almost all cases. *See Curtis v. Cellco P'ship*, 413 N.J.

Super. 26, 37 (App. Div. 2010) (describing as "extremely broad" a clause mandating the arbitration of "any controversy or claim arising out of or related to this [A]greement or any service provided under or in connection with this [A]greement"); *Angrisani v. Fin. Tech. Ventures, L.P.*, 402 N.J. Super. 138, 149 (App. Div. 2008) (describing such language as "extremely broad"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 617 (1985). "Such broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract." *Curtis*, 413 N.J. Super. at 38. It thus appears that the scope of GEICO's arbitration clause sweeps much more broadly than the Auto Act; the contractual clause would require arbitration of its fraud, unjust enrichment, NJIFPA, and RICO claims, because all of those claims arose "under" and "in connection with" the payment of PIP benefits.

GEICO does not dispute that its arbitration clause is broad enough to cover its claims in this case. Rather, it makes two less direct arguments. First, GEICO argues that "the arbitration clauses in GEICO's automobile insurance policies are not voluntary in any meaningful sense" and thus should not be enforced. Second, it cites cases in which NJIFPA claims were deemed unarbitrable. (DE 80 at 15.) The first argument fails entirely, and the second succeeds only in relation to NJIFPA claims.

GEICO is here attacking *its own* arbitration clause as not "voluntary." It is a fundamental principle of contract law that, all other things being equal, contracts are to be construed against the drafter. *See Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Authority*, 18 N.J. 294, 302 (1955). Here, GEICO itself drafted the DPRP and its arbitration clause and fully controlled its wording. The clause is voluntary in the sense that GEICO drafted it and remains free to change it for future insurance contracts. For now, however, I must find that GEICO manifested a clear intent to be bound by the unambiguous language of its own arbitration clause.

12

GEICO's second argument—one not of contract interpretation but of governing law—is more plausible, and partly successful. GEICO cites several cases in which courts have refused to order arbitration of NJIFPA claims, even where an arbitration clause in the underlying insurance contract might otherwise require it.[4] (DE 80 at 9.) In particular, the NJIFPA provides that an "insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction." N.J. Stat. Ann. § 17:33A–7(a). Several courts have interpreted this provision to mean that "the Legislature did not contemplate that a claim of a violation of the Insurance Fraud Prevention Act would be heard by an arbitrator." *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 395 N.J. Super. 156, 161 (App. Div. 2007). In *Fed. Ins. Co. v. von Windherburg-Cordeiro*, a court in this district similarly held that the structure and history of the NJIFPA compels the conclusion that "state law requires [plaintiff's] IFPA claim be brought in a judicial forum" even when a contractual arbitration clause is present. No. CIV.A. 12-2491 JAP, 2012 WL 6761877, at *4 (D.N.J. Dec. 31, 2012); *see also Citizens United Reciprocal Exchange v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018).

Defendants have a response. They argue that, if the NJIFPA trumps the contract, the Federal Arbitration Act trumps the NJIFPA, and requires arbitration of the disputes. (Stelton Br. at 12.) But there is a response to the response. As I held in *Meer*, the preemptive effect of the FAA is nullified in these circumstances by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), thus restoring the supremacy of state law. Under McCarran-Ferguson, state laws regulating insurance may not be preempted by federal statutes if: "(1) the state statute was enacted 'for the purpose of regulating the business of insurance,' (2) the federal statute does not 'specifically relate to the business of insurance,' and (3) the federal statute would 'invalidate, impair, or supersede' the state

---

[4]   GEICO also cites cases in which courts have declined to compel arbitration of RICO, unjust enrichment, and common law fraud claims based solely on the Auto Act. Those cases, however, did not involve an arbitration clause, which provides a separate basis for arbitration.

statute." *Meer*, 321 F. Supp. 3d at 492 (quoting *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 160 (3d Cir. 2000)). In *Meer,* I concluded that these circumstances trigger McCarran-Ferguson:

> In light of these factors, the FAA does not supersede the NJIFPA, but the other way around. The NJIFPA is specific to insurance; the FAA is not; and applying the FAA in this case would invalidate, impair, or supersede the NJIFPA. Reverse preemption under the McCarran-Ferguson Act therefore applies, and CURE may litigate its NJIFPA claims in court, notwithstanding the FAA."

321 F. Supp. 3d at 492 (cleaned up).

Because the FAA does not compel arbitration, I must follow the precedents which state clearly that NJIFPA claims cannot be arbitrated. The Stelton defendants' motion is denied to the extent it seeks to compel arbitration of GEICO's NJIFPA claims.[5]

My conclusion is different, however, as to GEICO's RICO, unjust enrichment, and common law fraud claims. As to them, there is no analogue to the NJIFPA's statutory bar to arbitration. The U.S. Supreme Court has specifically held that agreements to arbitrate RICO claims in the insurance fraud context can be enforced. *PacifiCare Health Sys. v. Book,* 538 U.S. 401, 407 (2003). Similarly, the New Jersey Supreme Court has upheld compelled arbitration of common law fraud claims. *Goffe v. Foulke Mgmt. Corp.*, 238 N.J. 191, 212 (2019).

I must therefore reject GEICO's argument that the NJIFPA claims, on the one hand, and GEICO's RICO, unjust enrichment, and common law fraud claims, on the other hand, must receive parallel treatment with respect to arbitration. (DE 80 at 17.) First, it is highly dubious that the FAA is reverse-preempted by McCarran-Ferguson in relation to the RICO, unjust enrichment,

---

[5]     There are good arguments that the language of the NJIFPA is better read as permitting, rather than mandating, claims to be litigated in court. (DE 84 at 6–7.) The NJIFPA's explicit authorization of court proceedings was perhaps included to distinguish the PIP requirement of arbitration. It does not necessarily follow that NJIFPA *precludes* arbitration. But precedent is conclusively to the contrary, and I follow it in holding that NJIFPA claims cannot be arbitrated.

and common law fraud claims, inasmuch as none of those statutes or causes of action were enacted "for the purpose of regulating the business of insurance." Moreover, even setting aside the FAA, New Jersey has its own policy in favor of arbitration, and that policy has teeth. Recently the New Jersey Supreme Court considered a case regarding a transportation worker who fell within an exemption to the FAA, so that arbitration was not compelled by federal law. That Court held that arbitration could nevertheless be compelled under the New Jersey Arbitration Act ("NJAA"), N.J. Stat. Ann. § 2A:23B-1 et seq. The NJAA, the Supreme Court held, "is nearly identical to the FAA and enunciates the same policies favoring arbitration." *Arafa v. Health Express Corp.*, 243 N.J. 147 (2020). Even assuming *arguendo* that the FAA does not apply to GEICO's remaining, non-NJIFPA claims against the Stelton defendants, arbitration could be compelled under the NJAA.

The Stelton defendants' motion to compel arbitration is therefore granted as to GEICO's unjust enrichment, common law fraud, and RICO claims against them. The motion is denied as to the NJIFPA claims.

### B. Stelton Defendants' motion to dismiss NJIFPA claims

The NJIFPA claims, then, will not be arbitrated but will remain here in court. I therefore consider next the Stelton Defendants' motion to dismiss the NJIFPA claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants assert that GEICO has failed to plead its NJIFPA Counts with sufficient specificity under the heightened pleading standard of Fed. R. Civ. P. 9(b). (Stelton Br. at 22.) I find that GEICO has met this standard and therefore decline to dismiss the NJIFPA claims against the Stelton Defendants.

A person or practitioner violates the NJIFPA if he or she:

(1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

15

(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled . . . .

N.J. Stat. Ann. § 17:33A-4. The NJIFPA grants an insurer a private right of action to seek compensation for such fraud, including recovery of attorneys' fees. *Id.* § 17:33A-7a. If the defendant has engaged in a pattern of IFPA violations, the insurer can seek treble damages. *Id.* § 17:33A-7b.

The Stelton defendants' claims for allegedly medically unnecessary MRIs fall within the NJIFPA.  The NJIFPA prohibits the submission of insurance reimbursement claims when a party knows that the claim contains false or misleading information concerning any fact or thing material to the claim, and prohibits concealment or knowing failure to disclose an event that affects the eligibility for reimbursement or the amount of the reimbursement. N.J. Stat. Ann. § 17:33A-4. That statutory prohibition sweeps more broadly than common law fraud:

Unlike common law fraud, proof of fraud under the [NJ]IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive. The New Jersey Supreme Court has also held that we must construe the [NJIFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals.

*Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 9-cv-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (internal citations and quotation marks omitted); *see also Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1246–47 (N.J. 2006); *State v. Nasir*, 809 A.2d 796, 802–03 (N.J. Super. Ct. App. Div. 2002).

16

GEICO's amended complaint sufficiently alleges that defendants violated the NJIFPA by billing GEICO for medically unnecessary MRI treatments. The amended complaint provides dozens of claim-specific examples of what GEICO alleges were fraudulent actions. The Stelton defendants assert that GEICO has not made its allegations with the specificity required by Rule 9(b), but this argument fails. GEICO factually alleges, with numerous claim-specific examples, the practices of the Stelton defendants that violated the NJIFPA, raising its allegations to the level of plausibility. For example, GEICO provides nearly three dozen claim-specific examples of insureds experiencing minor car crashes, and then receiving MRIs at the Stelton defendants' facilities just a few weeks later—much sooner than the recommended eight-to-ten-week period of conservative treatment that a patient should undertake before receiving an MRI. (Am. Compl. ¶ 80–81.) Similarly, GEICO provides numerous examples of cases in which two individuals were in the same car crash and later received an identical MRI at a Stelton facility, often less than eight weeks after the accident. (*Id.* ¶ 92.) Such selected examples constitute sufficient support for the allegations; GEICO is not required to set forth the evidentiary particulars of each of the many allegedly false claims submitted in violation of the NJIFPA at this, the pleading stage.

The Stelton defendants' motion to dismiss is therefore denied with regard to the NJIFPA counts.

### C. Dynamic Defendants' Motion to Dismiss

Because the Dynamic defendants have not moved to compel arbitration, I confine my analysis to whether GEICO's claims against the Dynamic Defendants must be dismissed on a 12(b)(6) standard. I find that GEICO has properly stated a claim for each Count under the heightened fraud pleading standard, so the Rule 12(b)(6) motion to dismiss is denied.

### i. Common Law Fraud

I begin with GEICO's claims of common law fraud against the Dynamic defendants. (Am. Compl. ¶ 237–242). Under New Jersey law, the five elements

of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see Frederico*, 507 F.3d at 200; *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).

The Dynamic defendants argue that GEICO fails to plead fraud with particularity under Rule 9(b), and in particular that it fails to adequately plead a misrepresentation of fact. (Dynamic Br. at 12–20.) As outlined in more detail above, a plaintiff alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. The governing principle is that "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017).

GEICO puts forward several theories of common law fraud based on different kinds of alleged misrepresentations. Thus the complaint alleges that defendants submitted claims for services that were not medically necessary, or that were not actually provided at all, or that were provided by independent contractors who are ineligible for reimbursement under New York law, or that were performed at radiology centers that did not comply with various state regulations.[6] (Am. Compl. ¶ 341 [p.95].) Under any of these theories, GEICO has adequately set forth the five legal elements of common law fraud. The question raised by Dynamic is whether those elements are supported by sufficient factual allegations.

---

[6]     The independent contractor issue is complex, and the laws of New York and New Jersey are, to a large degree in conflict. Because GEICO has stated a claim, irrespective of the independent contractor theory, it is not necessary to determine the narrow issue of whether services performed by an independent contractor in New Jersey on New York insureds are eligible for reimbursement.

18

First, GEICO has adequately alleged that there have been material misrepresentations in defendants' reimbursement claims. For instance, GEICO's complaint specifically identifies numerous claims where the insureds were involved in relatively minor accidents. GEICO alleges that those accidents involved "low-speed, low-impact collisions, that the insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all." (Am. Compl. ¶ 101). Many of these insureds, says GEICO, did not seek treatment at hospitals. *Id.* Similarly, GEICO gives numerous examples of minor car crashes involving two individuals who later received allegedly unnecessary MRIs on the same day. (*Id.* ¶ 92.) GEICO claims that these selected, claim-specific examples are strong evidence of a pattern of fraud. GEICO has also attached to its amended complaint Appendix 3, a spreadsheet listing 3,828 allegedly fraudulent bills submitted to GEICO by the Dynamic defendants through the mail. Fraudulent they may turn out to be, or not, but *as allegations* they are sufficiently specific.[7]

GEICO's allegations against the Dynamic defendants are somewhat sketchier than those against the Stelton defendants. As the Dynamic defendants point out, GEICO provides only one example of an insured who received an MRI from the Dynamic defendants sooner than the recommended eight to ten weeks after an accident. (Dynamic Br. at 16.) (For other defendants, there are multiple such examples. *E.g.*, Am. Compl. ¶ 101(viii).) Despite this difference, GEICO still provides dozens of other claim-specific examples of allegedly fraudulent bills submitted by the Dynamic defendants. For example, GEICO presents five claim-specific examples where two individuals were in the same minor car crash, and later had identical MRIs at

---

[7]    The spreadsheet itself is not direct evidence of fraud. It is merely a list of bills, with the code for the service performed, dates, dollar amounts, and so on. Of course, we are at the pleading stage; the attached spreadsheet, without necessarily rising to evidentiary status, serves to clarify what is being alleged. For that limited purpose, it lends specificity to the allegations.

Dynamic Medical. (Am. Compl. ¶ 92.) In addition, GEICO presents five claim-specific examples of patients who were in minor car crashes and whose MRIs, Pomerantz determined, revealed multiple disc herniations, a degree of injury that is inconsistent with the underlying crash. (*Id.* ¶ 101.) Finally, GEICO has also identified three cases where Pomerantz, working at Dynamic Medical, identified abnormalities in entirely normal MRI results. (*Id.* ¶ 127.) All of these allegations support a state of facts which, if proven, would constitute common law fraud. Such patterns of alleged misbehavior render plausible GEICO's theory that the Dynamic defendants were engaged in systematic material misrepresentation of the medical necessity of the MRIs they performed.

Second, GEICO has adequately pleaded Dynamic defendants' knowledge or belief as to the falsity of these misrepresentations. The Dynamic defendants submitted more than 3,000 claims to GEICO for allegedly unnecessary MRIs and other treatments. Given the high volume of allegedly false or ineligible bills, it is a reasonable inference that the Dynamic defendants acted knowingly.

Third, GEICO has also alleged that defendants intended for GEICO to rely on the material misrepresentations. This is not controversial. Defendants billed the services and submitted PIP reimbursement claims to GEICO; GEICO was required to under the NJ Auto Act, and did, disburse money to the defendants in payment of the claims.

Finally, GEICO has also pled that it reasonably relied on defendants' actions and sustained damages as a result. GEICO received and approved the claims, and paid out on them.

Therefore, GEICO has adequately pleaded its claim for common law fraud. The Dynamic defendants' motion to dismiss this Count is denied.

### ii.  RICO

GEICO asserts a civil RICO claim under 18 U.S.C § 1962(c). (Am. Compl. ¶ 229–236; *see* 18 U.S.C. § 1964 (granting civil remedies for RICO violation).) This claim is asserted against Brownstein, who is alleged to have conducted the affairs of an enterprise, Dynamic Medical, through a pattern of racketeering.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c)); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362-63 (3d Cir. 2010). To establish a claim under section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985); *see also District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 518–19 (D.N.J. 2011) (citation omitted).

The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Ins. Brokerage*, 618 F.3d at 362–63 (citing 18 U.S.C. § 1961(4)). With respect to the pattern of racketeering activity, the statute "requires at least two acts of racketeering activity within a ten-year period," which may include federal mail fraud under 18 U.S.C. § 1341. *Id.* (citations omitted). In addition, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

The Dynamic defendants argue that GEICO fails to state a RICO claim and that the RICO allegations are not sufficiently particularized. (Dynamic Br. at 22–23.) I disagree.

First, GEICO properly alleges facts supporting predicate acts of racketeering—*i.e.*, mail fraud in the submission of knowingly false PIP claims. *See* 18 U.S.C. § 1341. Second, GEICO has pled the RICO claims with the requisite specificity. GEICO asserts its RICO claim in relation to its theories of fraud based on the provision of medically unnecessary MRIs and the failure of the radiology centers, including Dynamic Medical, to comply with state laws. (Am. Compl. ¶ 231.) A fraudulent scheme, for the reasons stated above, is pled

with the requisite particularity, lacking only the additional element of mailing in furtherance. The Amended Complaint contains dozens of claim-specific examples of allegedly fraudulent MRIs. Furthermore, the appendix contains thousands of examples of bills submitted to GEICO, which, if proven to represent bills for fraudulent services, constitute mail fraud, the predicate act alleged under RICO. The frauds are alleged to constitute a "pattern," having been both interrelated and continuous since at least 2012. *See H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229 (1989) (addressing the requirements for a "pattern of racketeering activity," including continuity and predicate acts); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991). These allegations put defendants sufficiently on notice of the activities of which they are accused and contain sufficient specificity to meet Rule 9(b)'s heightened pleading standard.

Courts have permitted RICO claims under similar facts. For example, in *GEICO v. Korn*, this court permitted a RICO claim alleging mail fraud involving false insurance reimbursement claims. 310 F.R.D. 125, 129–31 (D.N.J. 2015). The plaintiffs in that case alleged that defendants exaggerated the severity of patients' injuries, overstated the amount of time doctors spent with patients, falsely stated that "comprehensive" and "detailed" patient histories were taken and that "comprehensive" and "detailed" examinations were performed, and overstated the complexity of medical decision making. *Id.*; *see also, e.g., State Farm Mutual Auto. Ins. Co. v. Radden*, No. 14-cv-13299, 2015 WL 631965, at *2 (E.D. Mich. Feb. 13, 2015) ("State Farm sufficiently states a substantive racketeering claim under RICO.... [T]he complaint describes a scheme involving nearly 700 acts of mail fraud involving a like number of fraudulent claims that occurred over a three year period."); *GEICO v. Gateva*, No. 12-cv-4236, 2014 WL 1330846, at *9 (E.D.N.Y. Mar. 10, 2014) (finding a RICO violations where "[p]laintiffs allege that [defendant] agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C.

§ 1341, by submitting or causing to be submitted numerous fraudulent bills seeking payment from GEICO"); *GEICO v. Esses*, No. 12-cv-4424, 2013 WL 5972481, at *7 (E.D.N.Y. Sept. 27, 2013) ("The defendants' numerous mailings of fraudulent insurance claims to [defendant] in connection with the schemes thus constitute the predicate acts of racketeering activity that establish violation of a [RICO]."); *GEICO v. Ningning He*, No. 2:19-cv-09465-KM-JBC, 2019 U.S. Dist. LEXIS 187047, at *17 (D.N.J. Oct. 29, 2019). GEICO has alleged mail fraud with similar facts to *GEICO v. Korn*, and has therefore pled its RICO claim with the requisite specificity.

Dynamic defendants' motion to dismiss GEICO's civil RICO claim is therefore denied.

### iii.  Unjust enrichment

The Dynamic defendants move to dismiss GEICO's claim of unjust enrichment. (Am. Compl. ¶ 243–48). Unjust enrichment is an equitable cause of action that imposes liability when a "defendant received a benefit" and defendant's "retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994). To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that "(1) at plaintiffs' expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (cleaned up).

Dynamic defendants argue that GEICO's claim for unjust enrichment must be dismissed because it is based on the same theory as its common law fraud and RICO claims. (Dynamic Br. at 24.) My discussion of those other counts suggests that unjust enrichment, too, has been plausibly alleged. We are, however, at the stage of alleging, not proving, and I will not require any premature election of theories. I therefore deny Dynamic defendants' motion to dismiss the unjust enrichment claim.

### iv. NJIFPA

Finally, the Dynamic defendants move to dismiss GEICO's claim under the NJIFPA. (Am. Compl. ¶ 225–28.) For the same reasons stated above in relation to the Stelton defendants, Sec. III.B., GEICO has stated facts that raise its NJIFPA claim against the Dynamic defendants to the level of plausibility. The Dynamic defendants' motion to dismiss GEICO's NJIFPA claim will therefore be denied.

### D. Declaratory Judgment

I now turn to GEICO's first claim, which requests a declaratory judgment. (Am Compl. ¶ 162–168.) That count contains two claims for relief:

(a) A declaration that GEICO is not required to pay its outstanding PIP requests for New York insureds.

(b) A declaration that the radiology facilities named as defendants "were not in compliance with all significant laws and regulations governing healthcare practice in New Jersey." (*Id.* ¶ 168.)

In its Amended Complaint GEICO removed a request that had appeared in its initial complaint for a declaration that it is not required to pay outstanding PIP claims for New Jersey, as opposed to New York, insureds. (DE 1 ¶ 140; Am. Compl. ¶ 165.) This theory was specifically foreclosed by *Gov't Emps. Ins. Co v. Tri-County. Neurology & Rehab. LLC*, 721 F. App'x 118, 122 (3d Cir. 2018). The reasoning of *Tri-County*, however, also mandates dismissal of claim (b), GEICO's request for a declaration that the radiology facilities were not in compliance with New Jersey regulations.

In *Tri-County,* the U.S. Court of Appeals for the Third Circuit held that a judicial declaration which stated that GEICO was not required to pay outstanding PIP claims was not permissible because it interfered with the statutorily mandated PIP arbitration scheme. *Id.* The PIP statute requires arbitration of "disputes involving medical expense benefits," defined broadly to include disputes as to "whether the disputed medical treatment was actually performed," "the necessity or appropriateness of consultations by other health

24

care providers," and "whether the treatment performed is reasonable, necessary, and compatible with the protocols provided." Therefore, the Court reasoned, GEICO's stated reasons to avoid paying the claims had to be asserted in arbitration. *Id.* (I set aside for a moment the issue of whether this holding applies to New York insureds.)

*Tri-County*'s invocation of the PIP arbitration requirement reads directly onto requested declaration (b), *supra*, involving regulatory noncompliance, for the following reason. The PIP statute *also* defines "disputes involving medical expense benefits" to include "the eligibility of the provider performing the treatment or service to be compensated under the terms of the policy or under regulations promulgated by the commissioner, including whether the person is licensed or certified to perform such treatment." N.J. Stat. Ann. § 39:6A-5.1(c). GEICO's claims that the radiology facilities did not comply with relevant regulations focuses largely on whether Pomerantz was unlawfully serving as medical director. But such a defense to PIP claims, no less than a claim that treatments were not actually performed, implicates a dispute over medical expense benefits, and therefore must be raised in arbitration. Following *Tri-County*, I find that this element of GEICO's request for declaratory judgment must be dismissed, as a declaration would interfere with New Jersey's PIP arbitration scheme.

That leaves only part of claim (a): GEICO's request for a declaration that it is not required to pay outstanding PIP claims for New York (as opposed to New Jersey) insureds. This request presents a difficult choice of law question that was not adequately briefed. It is unclear whether New York law should apply to New York insureds, even though they sought treatment in New Jersey, or whether New Jersey law should apply, as defendants argue. (DE 84 at 9–12.) Moreover, it is unclear how many of the thousands of bills at issue in this case involved New York insureds. Finding this issue to be too fact-bound for resolution on a motion to dismiss, I decline to dismiss this portion of GEICO's

declaratory judgment Count, *i.e.,* issue (a) as it pertains to New York insureds only.

### IV.    CONCLUSION

For the foregoing reasons, the motions to dismiss (DE 71, 77) are resolved as follows. With regard to Count 1, the motions to dismiss the declaratory judgment claims regarding New Jersey insureds are **GRANTED,** while those relating to New York insureds are **DENIED**. Stelton defendants' motion to compel arbitration (DE 77) is **GRANTED** with regard to Counts 3, 4, 5, 6, 8, 9, 10, 16, 17, 18, 20, 21, 22, and **DENIED** with regard to Counts 2, 7, 15, and 19. In addition, Stelton defendants' Rule 12(b)(6) motion to dismiss Counts 2, 7, 15, and 19 is **DENIED**. Dynamic defendants' Rule 12(b)(6) motion to dismiss Counts 11, 12, 13, and 14 (DE 71) is **DENIED**. To summarize: Count 1 (NY insureds only), as well as Counts 2, 7, 11, 12, 13, 14, 15 and 19 will remain before this court, and all other Counts will be dismissed in favor of arbitration.

An appropriate order accompanies this opinion.

Dated: May 11, 2022

/s/ Kevin McNulty

_____
**KEVIN MCNULTY**
**United States District Judge**